UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>HECTOR RUSTHENFORD GUERRERO FLORES,<br>  a/k/a "Niño Guerrero,"<br>  a/k/a "El Cejón,"<br>  a/k/a "El Innombrable,"<br><br>Defendant. | **SEALED INDICTMENT**<br><br>25 Cr. ___ ( ) |

## COUNT ONE
### (Racketeering Conspiracy)

The Grand Jury charges:

At all times relevant to this Indictment,

### THE TREN DE ARAGUA ENTERPRISE

1.  HECTOR RUSTHENFORD GUERRERO FLORES, a/k/a "Niño Guerrero," a/k/a "El Cejón," a/k/a "El Innombrable," the defendant,[1] and others known and unknown, were members and associates of Tren de Aragua ("TdA" or the "Enterprise"), a criminal organization that operated throughout North America, South America, and Europe, including in the United States, Venezuela, Colombia, Peru, Chile, Brazil, Mexico, and Spain. TdA—literally meaning "Train from Aragua"—originated in the Venezuelan state of Aragua in the 2000s, and TdA used the Tocorón Prison in Aragua as a center of operations to orchestrate and conduct criminal activities. TdA was largely composed of persons from South America, mostly from Venezuela. In the following years, gang members and associates left Venezuela and spread throughout North,

---

[1] "Niño Guerrero" in Spanish means "Warrior Boy"; "El Cejón" in Spanish means "The Eyebrow"; and "El Innombrable" in Spanish means "The Unnamable" or "He Who Shall Not Be Named."

South, and Central America and Spain, which expanded TdA's presence. As detailed below, for more than a decade, GUERRERO FLORES has served as either the leader or co-leader of TdA.

2. TdA members and associates established a presence in other countries in South America and Central America, and in the United States by engaging in the following pattern of behavior: First, TdA members and associates infiltrated other countries by illegally crossing their borders and finding cities and other residential neighborhoods where they could easily establish control over civilian populations. Next, TdA members and associates committed crimes and other acts of terrorism to assert control over their territory and enrich themselves through extortions, kidnappings, robberies, murders, drug trafficking, prostitution, sex trafficking, and trafficking of guns, grenades, and ammunition. Many of the crimes and acts of terrorism committed by TdA members and associates were ordered, directed, facilitated, or otherwise supported by TdA leadership in South America, including HECTOR RUSTHENFORD GUERRERO FLORES, a/k/a "Niño Guerrero," a/k/a "El Cejón," a/k/a "El Innombrable," the defendant. Finally, TdA members and associates spread to other locations, forming cells with their own local leadership and structure. TdA's violent tactics often resulted in entire neighborhoods and apartment buildings being subject to TdA's control. TdA members and associates laundered the proceeds of their criminal activities, including through cryptocurrency, and transmitted a portion of the proceeds to TdA leadership in South America, including GUERRERO FLORES.

3. Through this pattern of behavior, TdA members and associates established a strong gang presence in other countries in South America, Central America, North America, and Europe, like Colombia, Peru, Chile, Brazil, Mexico, and Spain. TdA members and associates also illegally crossed the border into the United States and established a presence in various parts of the country, including New York, Colorado, New Mexico, Texas, Nebraska, Illinois, and Florida. As a result,

TdA operated as a national and international criminal organization with its members and associates regularly conducting gang activities and acts of terrorism transcending national boundaries across the Western Hemisphere.

4. TdA members and associates also worked in concert with some of the largest cocaine trafficking organizations in the world, including the Cártel de los Soles, or "Cartel of the Suns." The Cártel de los Soles is and, at all relevant times, was, a Venezuelan drug-trafficking organization comprised of high-ranking Venezuelan government officials who corrupted the legitimate institutions of Venezuela to facilitate the importation of tons of cocaine into the United States, including through the use of maritime drug distribution routes with boats and ships carrying hundreds or thousands of kilograms of narcotics, including cocaine. It is and was the goal of the Cártel de los Soles to "flood" the United States with cocaine, as it has sought to weaponize the drug and inflict its harmful and addictive effects on users in the United States. Members and associates of the Cártel de los Soles have included, among others, the most powerful politicians in Venezuela, former military officials, and some of the largest and most violent cocaine traffickers in the world. In turn, certain of these politicians have controlled the locations from which TdA grew in power and influence. Members and associates of the Cártel de los Soles relied upon corruption and violence as they transported cocaine from Venezuela en route to the United States. In Venezuela, politicians aided cocaine traffickers by offering them safe passage for their cocaine, protection from arrest, and, at times, the support of the police and military. And Cártel de los Soles's cocaine traffickers relied on violence throughout their cocaine distribution route—including the use of firearms, kidnappings, and murder—to protect their cocaine, their distribution networks, and themselves.

5. TdA in the United States is organized by geographic area of operation into subsets, or cells. Each regional cell typically had one or more leaders who were responsible for, among other things, managing the criminal enterprise's activities in the territory, collecting money from other members and associates to finance gang activities and crimes, directing day to day management of the region, planning and ordering acts of violence against rival gang members, associates, and other victims. The leaders of these subsets or cells reported to, received directives from, and distributed assets and drug proceeds to TdA leaders throughout the United States, Mexico, Central America, and South America.

6. TdA, including its leaders, members, and associates, constituted an "enterprise," as defined by Title 18, United States Code, Section 1961(4), that is, a group of individuals associated in fact that engaged in, and the activities of which affected, interstate and foreign commerce. TdA constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of TdA.

7. HECTOR RUSTHENFORD GUERRERO FLORES, a/k/a "Niño Guerrero," a/k/a "El Cejón," a/k/a "El Innombrable," the defendant, was a leader, member, and associate of TdA and participated in unlawful and other activities in furtherance of the conduct of TdA's affairs. For over a decade through to the present, GUERRERO FLORES served as either the leader or co-leader of TdA, acting as the mastermind over TdA's expansion across the Western Hemisphere. During much of that time, GUERRERO FLORES operated from Tocorón Prison, where the Venezuelan government allowed GUERRERO FLORES to control the day-to-day operations of the prison. Under GUERRERO FLORES's direction, TdA members and associates engaged in a wide range of crimes, including extortions, kidnappings, murders, drug trafficking, gun trafficking, prostitution, sex trafficking, robberies, bank burglaries, and money laundering. GUERRERO

FLORES and other high-level leaders of TdA would collect a "causa" or fee from income generated by lower-level members of TdA, thereby enriching themselves from income earned by other TdA members. As the leader of TdA, while operating from Venezuela and elsewhere, GUERRERO FLORES ordered, directed, facilitated, and supported acts of violence and terrorism transcending national boundaries, including murders, kidnappings, extortions, and maiming against victims located inside and outside the United States.

8. HECTOR RUSTHENFORD GUERRERO FLORES, a/k/a "Niño Guerrero," a/k/a "El Cejón," a/k/a "El Innombrable," the defendant, also worked with several of the largest cocaine traffickers in Venezuela to transport tons of cocaine from Venezuela for eventual distribution in the United States. GUERRERO FLORES has both directed and personally facilitated the transportation of this cocaine by supplying teams of heavily armed individuals to protect and transport cocaine shipments for his trafficking partners and associates. These individuals were armed with, among other automatic weapons, AK-47s, MP5s, and AR-15s, as well as grenades.

9. The cocaine that HECTOR RUSTHENFORD GUERRERO FLORES, a/k/a "Niño Guerrero," a/k/a "El Cejón," a/k/a "El Innombrable," the defendant, helped distribute was manufactured in Colombia and Venezuela. The cocaine shipments were then transported from their point of origin and flown from clandestine airstrips or transported by maritime routes from Venezuela to Central America. From there, drug trafficking associates working with the Venezuelan distributors transported this cocaine north, through Mexico, and across the U.S. border. These drug trafficking associates included members of the largest, most violent, narcotics trafficking organizations in Mexico. At times, GUERRERO FLORES personally accompanied large cocaine loads as they were guarded by teams of armed men, en route to airports or airstrips for transport north and eventual distribution to the United States. GUERRERO FLORES was paid

a fee per kilogram transported or received an interest in portions of these massive cocaine shipments in lieu of payment. The traffickers that GUERRERO FLORES worked with moved thousands of kilograms per shipment, multiple times per month, resulting in the distribution of hundreds of tons of cocaine to the United States.

10. In addition, HECTOR RUSTHENFORD GUERRERO FLORES, a/k/a "Niño Guerrero," a/k/a "El Cejón," a/k/a "El Innombrable," the defendant, also sold firearms to large-scale cocaine traffickers operating out of Venezuela. These traffickers purchased from GUERRERO FLORES automatic weapons including AK-47s, MP5s, and AR-15s, and then used the weapons they purchased from GUERRERO FLORES to protect their cocaine loads.

## PURPOSES OF THE TdA ENTERPRISE

11. The purposes of the TdA enterprise included the following:

    a. Preserving and protecting the power and territory of TdA and its members and associates through acts involving terrorism, murder, assault, extortion, robbery, other acts of violence, and threats of violence, including acts of violence and threats of violence directed at former members and associates of TdA who associated with a splinter organization known as "Anti-Tren";

    b. Enriching the members and associates of TdA through, among other things, (i) the unlawful smuggling of individuals, including young women from Venezuela into Peru, Colombia, Mexico, and the United States, (ii) the sex trafficking of young women (whom members and associates of TdA often refer to as "multadas") who had been unlawfully smuggled into the United States, (iii) the trafficking and importation of controlled substances, including cocaine, marijuana, and a mixed substance called "tusi" that contains ketamine and other controlled

substances, at least some of which was imported into the United States, (iv) extortions and kidnappings, and (v) armed robberies;

   c. Increasing TdA's control and authority over its territory and profits through threats, intimidation, and acts of violence against members and associates of rival gangs and sex trafficking victims;

   d. Keeping victims and potential victims in fear of TdA and its members and associates through threats and acts of violence;

   e. Promoting and enhancing TdA and the reputation and activities of its members and associates;

   f. Providing assistance to members and associates of TdA who committed crimes for and on behalf of TdA, such as financial support, lodging, and interstate transportation for members and associates of TDA to flee prosecution; and

   g. Protecting TdA and its members and associates from detection and prosecution by law enforcement authorities through acts of obstruction, intimidation, threats, and violence against potential witnesses to crimes committed by members of TdA.

## MEANS AND METHODS OF THE TDA ENTERPRISE

12. Among the means and methods employed by the members and associates in conducting and participating in the conduct of the affairs of TdA were the following:

   a. Members and associates of TdA committed and conspired, attempted, and threatened to commit, acts of violence and terrorism, including murder, kidnapping, assault, extortion, and robbery, to protect and to expand TdA's criminal operations, resolve disputes within TdA, to retaliate against rival organizations, including Anti-Tren, and to maintain control over sex trafficking victims.

b. Members and associates of TdA engaged in human smuggling and sex trafficking of young women they referred to as "multadas," whom TdA transported from Venezuela into Colombia, Peru, and the United States in exchange for debts that the "multadas" would pay back to TdA by engaging in commercial sex work. Members of TdA enforced compliance among "multadas" by, among other things, (i) threatening to kill "multadas" and their families, (ii) assaulting "multadas," (iii) shooting or killing "multadas," and (iv) tracking down and kidnapping "multadas" who tried to flee.

c. Members and associates of TdA distributed and possessed with intent to distribute controlled substances, including (i) cocaine, (ii) marijuana, and (iii) a mixed substance called "tusi" that contains ketamine and other controlled substances.

d. Members and associates of TdA generated income by participating in extortions and kidnappings, drug trafficking and importation, robbery, sex trafficking, human smuggling, retail theft, fraud, and bank burglaries;

e. Members and associates of TdA committed kidnappings, extortions, and armed robberies.

f. Members and associates of TdA obtained, possessed, trafficked, and used firearms and ammunition.

## THE RACKETEERING CONSPIRACY

13. From at least in or about 2005 through at least in or about 2025, in the Southern District of New York and elsewhere, HECTOR RUSTHENFORD GUERRERO FLORES, a/k/a "Niño Guerrero," a/k/a "El Cejón," a/k/a "El Innombrable," the defendant, and others known and unknown, being persons employed by and associated with TdA, an enterprise engaged in, and the activities of which affected, interstate and foreign commerce, knowingly combined, conspired,

8

confederated, and agreed together and with each other to violate Title 18, United States Code, Section 1962(c), that is, to conduct and participate, directly and indirectly, in the conduct of the affairs of TdA through a pattern of racketeering activity, as defined in Title 18, United States Code, Sections 1961(1) and 1961(5), which pattern of racketeering activity consisted of:

  a. Multiple acts involving:

    (i) murder, chargeable under the following provisions of state law: New Mexico Statutes Annotated, Sections 30-2-1 (murder), 30-1-13 (accessory), 30-28-1 (attempt), and 30-28-2; Colorado Revised Statutes, Sections 18-3-103 (murder), 18-2-201 (conspiracy), 18-2-101 (attempt), and 18-1-603 (aiding and abetting);

    (ii) extortion, chargeable under the following provisions of state law: Colorado Revised Statutes, Sections 18-3-207 (extortion), 18-2-201 (conspiracy), 18-2-101 (attempt), and 18-1-603 (aiding and abetting); Florida Statutes, Sections 836.05 (extortion), 777.04(3) (conspiracy), 777.04(1) (attempt), and 777.0011 (aiding and abetting);

    (iii) kidnapping, chargeable under the following provisions of state law: New Mexico Statutes Annotated, Sections 30-4-1 (kidnapping), 30-1-13 (accessory), 30-28-1 (attempt), and 30-28-2 (conspiracy); Colorado Revised Statutes, Sections 18-3-301 and 302 (kidnapping), 18-2-201 (conspiracy), 18-2-101 (attempt), and 18-1-603 (aiding and abetting);

    (iv) robbery, chargeable under the following provisions of state law: Colorado Revised Statutes, Sections 18-4-301 and 302 (robbery), 18-2-201 (conspiracy), 18-2-101 (attempt), and 18-1-603 (aiding and abetting);

  b. multiple acts indictable under:

    (i) Title 18, United States Code, Section 956(a)(1) (relating to conspiracy to murder, kidnap, or maim persons abroad);

(ii) Title 18, United States Code, Section 2332b (relating to acts of terrorism transcending national boundaries);

(iii) Title 18, United States Code, Section 2339A (relating to providing material support to terrorists);

(iv) Title 18, United States Code, Section 1591 (relating to sex trafficking by force, fraud, and coercion);

(v) Title 18, United States Code, Section 1951 (relating to interference with commerce, robbery, or extortion);

(vi) Title 18, United States Code, Section 933 (relating to trafficking in firearms);

(vii) Title 18, United States Code, Sections 2314 and 2315 (interstate transportation and receipt of stolen property);

(viii) Title 18, United States Code, Sections 1956 and 1957 (money laundering);

(ix) Title 18, United States Code, Section 1512 (relating to witness tampering and destruction of records and documents); and

c. multiple offenses involving the distribution of controlled substances, including cocaine, marijuana, and ketamine, chargeable under Title 21, United States Code, Sections 841(a)(1) (distribution and possession with intent to distribute) 846 (conspiracy), 959 and 960 (importation), 963 (conspiracy), and Title 18, United States Code, Section 2 (aiding and abetting, and willfully causing);

14. It was a part of the conspiracy that HECTOR RUSTHENFORD GUERRERO FLORES, a/k/a "Niño Guerrero," a/k/a "El Cejón," a/k/a "El Innombrable," the defendant, agreed that a conspirator would commit at least two acts of racketeering activity in the conduct of the affairs of TdA.

(Title 18, United States Code, Section 1962(d).)

## COUNT TWO
### (Conspiracy to Provide Material Support to Terrorists)

The Grand Jury further charges:

15. The allegations contained in paragraphs 1 through 12 of this Indictment are repeated and realleged as if fully set forth herein.

16. From at least in or about 2005 through at least in or about 2025, in Venezuela, Colombia, Peru, Chile, Brazil, Mexico, Spain, the Southern District of New York, and elsewhere, and in an offense begun and committed out of the jurisdiction of any particular State or district of the United States, HECTOR RUSTHENFORD GUERRERO FLORES, a/k/a "Niño Guerrero," a/k/a "El Cejón," a/k/a "El Innombrable," the defendant, and others known and unknown, at least one of whom is expected to be first brought to and arrested in the Southern District of New York, knowingly and intentionally conspired to provide "material support or resources," as that term is defined in Title 18, United States Code, Section 2339A(b), namely, services, property, personnel (including oneself), training, and expert advice or assistance, knowing and intending that they were to be used in preparation for, and in carrying out, a violation of Title 18, United States Code,

Sections 956 (conspiracy to kill, kidnap, maim, or injure persons or damage property in a foreign country) and 2332b (Acts of Terrorism Transcending National Boundaries).

(Title 18, United States Code, Section 2339A; and
Title 18, United States Code, Section 3238)

## COUNT THREE
**(Cocaine Importation Conspiracy)**

The Grand Jury further charges:

17. The allegations contained in paragraphs 1 through 12 of this Indictment are repeated and realleged as if fully set forth herein.

18. From at least in or about 2005 through at least in or about 2025, in Venezuela, Colombia, Peru, Chile, Brazil, Mexico, Spain, the Southern District of New York, and elsewhere, and in an offense begun and committed out of the jurisdiction of any particular State or district of the United States, HECTOR RUSTHENFORD GUERRERO FLORES, a/k/a "Niño Guerrero," a/k/a "El Cejón," a/k/a "El Innombrable," the defendant, and others known and unknown, at least one of whom is expected to be first brought to and arrested in the Southern District of New York, knowingly and intentionally combined, conspired, confederated, and agreed together and with each other to violate the narcotics laws of the United States.

19. It was a part and an object of the conspiracy that HECTOR RUSTHENFORD GUERRERO FLORES, a/k/a "Niño Guerrero," a/k/a "El Cejón," a/k/a "El Innombrable," the defendant, and others known and unknown, would and did import into the United States and into the customs territory of the United States from a place outside thereof a controlled substance, in violation of Title 21, United States Code, Sections 952(a) and 960(a)(1).

20. It was further a part and an object of the conspiracy that HECTOR RUSTHENFORD GUERRERO FLORES, a/k/a "Niño Guerrero," a/k/a "El Cejón," a/k/a "El

12

Innombrable," the defendant, and others known and unknown, would and did manufacture, distribute, and possess with intent to distribute a controlled substance, intending, knowing, and having reasonable cause to believe that such substance would be unlawfully imported into the United States and into waters within a distance of 12 miles of the coast of the United States, in violation of Title 21, United States Code, Sections 959(a) and 960(a)(3).

21. The controlled substance that HECTOR RUSTHENFORD GUERRERO FLORES, a/k/a "Niño Guerrero," a/k/a "El Cejón," a/k/a "El Innombrable," the defendant, conspired to (i) import into the United States and into the customs territory of the United States from a place outside thereof, and (ii) manufacture, distribute, and possess with intent to distribute, intending, knowing, and having reasonable cause to believe that such substance would be unlawfully imported into the United States and into waters within a distance of 12 miles of the coast of the United States, was 5 kilograms and more of mixtures and substances containing a detectable amount of cocaine, in violation of Title 21, United States Code, Section 960(b)(1)(B).

(Title 21, United States Code, Section 963; and
Title 18, United States Code, Section 3238.)

## COUNT FOUR
### (Possession of Machineguns and Destructive Devices)

The Grand Jury further charges:

22. From at least in or about 2005 through at least in or about 2025, in Venezuela, Colombia, Mexico, the Southern District of New York, and elsewhere, and in an offense begun and committed out of the jurisdiction of any particular State or district, HECTOR RUSTHENFORD GUERRERO FLORES, a/k/a "Niño Guerrero," a/k/a "El Cejón," a/k/a "El Innombrable," the defendant, who is expected to be first brought to and arrested in the Southern District of New York, during and in relation to a drug trafficking crime for which he may be

13

prosecuted in a court of the United States, to wit, the offense charged in Count Three of this Indictment, knowingly used and carried firearms, and, in furtherance of such crimes, knowingly possessed firearms, and aided and abetted the use, carrying, and possession of firearms, including machineguns that were capable of automatically shooting more than one shot, without manual reloading, by a single function of the trigger, as well as destructive devices.

(Title 18, United States Code, Sections 924(c)(1)(A), 924(c)(1)(B)(ii), 3238, and 2.)

## FORFEITURE ALLEGATIONS

23. As a result of committing the offense alleged in Count One of this Indictment, HECTOR RUSTHENFORD GUERRERO FLORES, a/k/a "Niño Guerrero," a/k/a "El Cejón," a/k/a "El Innombrable," the defendant, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 1963, any and all interests the defendants acquired or maintained in violation of Title 18, United States Code, Section 1962; any and all interests in, securities of, claims against, and property or contractual rights of any kind affording a source of influence over, the enterprise named and described herein which the defendant established, operated, controlled, conducted, and participated in the conduct of, in violation of Title 18, United States Code, Section 1962; and any and all property constituting and derived from proceeds obtained, directly and indirectly, from the offense alleged in Count One of this Indictment including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offense.

24. As a result of committing the controlled substance offense charged in Count Three of this Indictment, HECTOR RUSTHENFORD GUERRERO FLORES, a/k/a "Niño Guerrero," a/k/a "El Cejón," a/k/a "El Innombrable," the defendant, shall forfeit to the United States, pursuant to Title 21, United States Code, Sections 853 and 970, any and all property constituting, or derived

from, any proceeds the defendant obtained, directly or indirectly, as a result of the offense, and any and all property used, or intended to be used, in any manner or part, to commit, and to facilitate the commission of, the offense charged in Count Three of this Indictment.

25. As a result of committing the firearms offense charged in Count Four of this Indictment, HECTOR RUSTHENFORD GUERRERO FLORES, a/k/a "Niño Guerrero," a/k/a "El Cejón," a/k/a "El Innombrable," the defendant, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 924(d), all firearms and ammunition involved in and used in the commission of the offense charged in Count Four of this Indictment.

Substitute Assets Provision

26. If any of the above-described forfeitable property, as a result of any act or omission of HECTOR RUSTHENFORD GUERRERO FLORES, a/k/a "Niño Guerrero," a/k/a "El Cejón," a/k/a "El Innombrable," the defendant:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third person;

    c. has been placed beyond the jurisdiction of the Court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be subdivided without difficulty,

it is the intent of the United States, pursuant to Title 18, United States Code, Section 1963(m), and Title 21, United States Code, Sections 853(p) and 970, and Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of the defendant up to the value of the above forfeitable property.

(Title 21, United States Code, Sections 853 and 970;
Title 18, United States Code, Sections 1963 and 924(d); and
Title 28, United States Code, Section 2461(c).)

FOREPERSON

*Jay Clayton*
JAY CLAYTON
United States Attorney